IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00346-PAB-MEH

OWNERS INSURANCE COMPANY,

 Plaintiff,

v.

11380 EAST SMITH ROAD, LLC, and
3555 MOLINE, LLC,

 Defendants.
_____

# ORDER
_____

This matter is before the Court on Plaintiff's Opposed Motion to Exclude or Limit Defendants' Expert Edward Fronapfel's Opinion Testimony [Docket No. 78].

## I.  BACKGROUND

This dispute revolves around an alleged breach of insurance contract and subsequent bad faith in resolving a claim under the policy. On May 23, 2015, plaintiff issued a building and personal property insurance policy to defendants for two buildings. *See* Docket No. 1 at 2, ¶ 3. One building was located at 11380 East Smith Road and the other at 3555 Moline Street in Aurora, Colorado. *See id.* at 1-2, ¶¶ 2-3. On June 24, 2015, a hail storm occurred at both Smith Road and Moline Street. *See id.* at 2, ¶ 5. Defendants made a claim to plaintiff for property damage from the hail storm. *Id.* Plaintiff and defendants made their own investigation of the property, which resulted in disputes over "the scope of the alleged damage, the scope of the associated repairs,

and the scope of coverage under the Policy." *See id.*

On February 8, 2017 plaintiff filed suit. *See id.* at 1. Plaintiff seeks relief in the form of various declaratory judgments that clarify what plaintiff's responsibilities are under the policy and whether the alleged damage is covered under the policy. *See id.* at 18-23. Defendants filed an answer and counterclaim on April 3, 2017. *See* Docket No. 12. Defendants bring claims for breach of contract, unreasonable delay in violation of Colo. Rev. Stat. §§ 10-3-1115, 1116, and common law bad faith.[1] *See id.* at 33-36. On August 3, 2020, plaintiff filed the present motion to exclude defendants' expert, Edward Fronapfel. *See* Docket No. 78.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, in ruling on a motion pursuant to Rule 702, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is

---

[1] Defendants also brought a claim to compel appraisal, which has already been dismissed. *See* Docket No. 20.

qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the

proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also

consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

### III. ANALYSIS

Plaintiff moves to preclude defendants' expert, Edward Fronapfel, from expressing his opinions regarding the reasonableness of the repair estimate for defendants' roof. Docket No. 78 at 7-15. Mr. Fronapfel was disclosed by defendants as an expert on construction estimation and engineering repairs. *See* Docket No. 78-1 at 2, 111-115. Specifically, Mr. Fronapfel prepared a report ("SBSA report") containing various opinions about what parts of defendants' roofs were damaged, what caused the damage, and whether the damage necessitated repairs. *See id.* at 71-156. Attached to that report is a cost estimate prepared by Darwin Cooprider ("Cooprider estimate"), which Mr. Fronapfel relies on for several of his opinions. *See id.* at 157-66.

Plaintiff seeks to exclude the following opinions: (1) Mr. Fronapfel's opinion that "the estimated costs in the Cooprider estimate are 'reasonable and likely accurate'" and (2) "[b]ased upon our calculation using current pricing, the credit cost [i.e., the $340,000] is reasonable as the current line item pricing derived by Mr. Cooprider indicates that the replacement of the roof covering system alone [in the Moline Street building] would be on the order of $365,000." *See* Docket No. 78 at 7-10. Plaintiff has four general categories of objections to Mr. Fronapfel's opinions: (1) Mr. Fronapfel is unqualified; (2) Mr. Fronapfel does not have a reliable methodology; (3) even if he did, Mr. Fronapfel's methodology is not generally accepted; and (4) defendants failed to

5

adequately disclose Mr. Fronapfel's opinions. *Id.* at 7-15. Each of the opinions is analyzed below.

Before doing so, however, the Court notes that it will not consider Mr. Fronapfel's supplemental affidavit. *See* Docket No. 85-1. A supplement is only permitted "for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *See Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 663 (10th Cir. 2018) (unpublished) (citation omitted). A party may not "supplement a previously filed expert report because [it] wants to." *See id.* (citation omitted). "Previously proposed opinions should stand on their own and do not need further emphasis." *Id.* As a result, defendants may not utilize a supplemental affidavit as a means to get in opinions that were neither contained nor disclosed in Mr. Fronapfel's original report.

1. "[T]he estimated costs in the Cooprider estimate are 'reasonable and likely accurate.'"

Plaintiff seeks to exclude Mr. Fronapfel's opinion from his deposition that he "believe[s]" the "estimated amounts included by Mr. Cooprider" in the SBSA report are "reasonable and likely accurate." *See* Docket No. 78 at 7; Docket No. 78-3 at 30. Plaintiff makes two arguments: (1) Mr. Fronapfel is not qualified to state an opinion on the reasonableness of the cost estimate and (2) Mr. Fronapfel "provided no reasoning or methodology" for his opinion. *See* Docket No. 78 at 7-8.

Regarding qualifications, plaintiff argues that Mr. Fronapfel is an engineer, and that estimating and cost repairs are "beyond the comfort of [Mr.] Fronapfel's own 'reasonable confines.'" *Id.* at 8. Defendants, who have the burden of demonstrating the

admissibility of Mr. Fronapfel's opinions, argue that Mr. Fronapfel (1) has extensive experience and training in "estimating of construction and reconstruction costs"; (2) teaches estimating at both an undergraduate and graduate level; and (3) "reviews hundreds of estimates of costs for repairs each year." *See* Docket No. 85 at 7.

Under Rule 702, an expert's qualifications may derive from knowledge, skill, experience, training, or education. "[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)) (quotations and alterations omitted); *see also Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998) ("[D]isputes as to the strength of his credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony.").

Furthermore, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011). A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Id.*

The Court finds that Mr. Fronapfel is qualified to opine on the reasonableness of cost estimates and repairs for construction projects. Mr. Fronapfel's report, the SBSA

report, demonstrates a familiarity with roofing, roof damage, repairs, and hail damage. Additionally, he has a masters degree in Civil Engineering, is a board certified forensic engineer, owns and operates a professional engineering and architectural firm, and teaches an estimating class.[2]  As a result, Mr. Fronapfel has "technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).  Mr. Fronapfel's opinion regarding the reasonableness of the estimate will not be excluded based on a lack of qualifications.

However, the Court agrees with plaintiff that Mr. Fronapfel has not provided any methodology to support his opinion that the Cooprider estimate is reasonable. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Rule 702 requires that expert testimony be "helpful[] to the trier of fact." *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).  "[C]onclusory opinions, which require blind acceptance of the expert's *ipse dixit*, are never helpful." *Huang v. Marklyn Grp. Inc.*, No. 11-cv-01765-REB-BNB, 2014 WL 3559367, at *5 (D. Colo. July 18, 2014).  Instead, expert testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods," and that the expert "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

---

[2] Plaintiff argues that Mr. Fronapfel is an "engineer" and not a cost estimator. *See* Docket No. 78 at 8.  But plaintiff fails to explain why being a structural and forensic engineer, one with significant experience, means that Mr. Fronapfel is unqualified to discuss the costs for various engineering projects.  Rather, plaintiff asserts that an engineer would be unqualified to provide cost estimates without any explanation as to why.

First, Mr. Fronapfel's opinion from his deposition contains no explanation as to why he "believes" Mr. Cooprider's estimate is "likely" reasonable and accurate. Rather, Mr. Fronapfel was asked: "[B]ased upon what you understand to be the scope of repairs, do you have opinions about whether the estimated amounts included by Mr. Cooprider are reasonable and likely accurate?" See Docket No. 78-3 at 30. Mr. Fronapfel answered yes, with no corresponding explanation. But a court is not required to accept an expert's *ipse dixit*. While Mr. Fronapfel is not required to prove that his opinion is correct, when relying on experience as he does here, he still "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Medina-Copete*, 757 F.3d at 1104. Mr. Fronapfel's opinion that the Cooprider estimate is likely correct and reasonable is devoid of any explanation.

Plaintiff argues that the SBSA report adequately explains Mr. Fronapfel's reliance and methodology. See Docket No. 85 at 6. If the SBSA report contained Mr. Fronapfel's opinion that the Cooprider estimate was reasonable and correct and explained the basis for the opinion, it would be irrelevant that he failed to give a full explanation in his deposition. However, the SBSA report contains no such statement or explanation. The SBSA report provides detailed explanations of the damage to the roof and the repairs needed. See Docket No. 78-1 at 114-15. For example, the SBSA report states that "the entire roof covering assembly should be removed . . . due to the extent of hail-cause damages on the roof covering membrane and requirements . . . for entrapped water in roof covering systems." See id. at 114. However, when addressing

9

the issue of "probable costs associated with the repair/replacement of hail damaged roof covering system," the SBSA report explicitly states that it relied on Mr. Cooprider to provide the estimates. *See id.* at 115. The report neither explains how Mr. Cooprider arrived at his estimate nor states that his estimate is "likely" reasonable and correct. *See id.*

Plaintiff contends that the methodology for the estimate is the "Xactimate calculation," which was attached to the SBSA report. *See* Docket No. 85 at 6. The Xactimate calculation, however, takes the form of a spreadsheet filled with numbers, acronyms, and costs, and containing no corresponding explanation. *See* Docket No. 78-1 at 157-65. While it is easy enough to say the methodology is simple arithmetic, that is, adding up the numbers in the spreadsheet to get the total, there is no explanation, in the spreadsheet, by Mr. Fronapfel, or by Mr. Cooprider, as to why certain numbers are there or how they were chosen – for example, whether the "unit" price of an object also includes labor costs. *See id.* at 158. The problem with Mr. Fronapfel's opinion, and Mr. Cooprider's estimate, is not that Xactimate was used to calculate the estimate, but that the SBSA report contains no explanation of the estimate at all; it simply attaches the report without more. Plaintiff is correct that the SBSA report adequately explains why certain items need to be replaced. However, the Xactimate estimate contains far more than statements about which items need to be replaced; each item has several components to its replacement cost, the inclusion of which is not explained. Explaining why an item needs to be replaced is not the same as explaining the cost of replacement.

Defendants argue that "Mr. Fronapfel controlled and directed the items being

10

estimated using the methodology of Xactimate, with Mr. Cooprider simply operating the software to calculate the pricing." See Docket No. 85 at 11. In other words, defendants claim that Mr. Cooprider did nothing more than plug in numbers. The problem, however, is that the SBSA report, while detailing which sections need to be repaired and why, provides no inputs for Mr. Cooprider to utilize in his estimate. For example, the SBSA report states that "[r]oof top units and vents on the Main and Ancillary Building should be repaired or replaced." See Docket No. 78-1 at 114. Noticeably absent is what precise pieces should be replaced and in what quantities. Yet the Xactimate estimate contains line items such as "[r]emove [t]ear off, haul and dispose of 4 ply built-up roofing," which applies to 700 square feet of the roof. See id. at 158. Given that the SBA report does not detail how much of any particular roofing item must be repaired, there is no basis for defendants to assert that Mr. Cooprider was simply filling in data from the SBSA report or Mr. Fronapfel.

Defendants makes a different argument for why it is reasonable for Mr. Fronapfel to rely on the Cooprider estimate. See Docket No. 85 at 8. The issue, however, is not whether it is reasonable for someone like Mr. Fronapfel to rely on the Cooprider estimate, but whether his reliance on the estimate – and the estimate itself – was sufficiently explained. Plaintiff provides no support for the argument that reliance on a third-party is permitted when that reliance is unexplained and the third-party's calculation or opinion is equally unexplained. Mr. Fronapfel cannot merely parrot the unexplained opinion of a non-testifying third-party without providing "independent judgment" regarding the third-party's opinion. See United States v. Pablo, 696 F.3d 1280, 1288 (10th Cir. 2012). As a result, Mr. Fronapfel's opinion that the Cooprider

11

estimate is reasonable and accurate will be excluded.

2. "Based upon our calculation using current pricing, the credit cost [i.e., the $340,000] is reasonable as the current line item pricing derived by Mr. Cooprider indicates that the replacement of the roof covering system alone [in the Moline Street building] would be on the order of $365,000 (less any replacement of the rooftop appurtenances and any parapet wall copings)"

Plaintiff seeks to exclude Mr. Fronapfel's opinion that the credit cost received during the sale of the Moline Street building is reasonable because Mr. Fronapfel fails to explain how he reached his reasonableness opinion. *See* Docket No. 78 at 9. Defendants respond that the methodology is "straightforward"; "the roof was of the same construction as the roof on the Main Building"; the Main building utilized Xactimate; the Moline building also used Xactimate, with a calculation of $365,000; and because $340,000 was "slightly less" than this calculation, it was "by comparison, reasonable." *See* Docket No. 85 at 11.

The Court finds that Mr. Fronapfel's opinion that the credit was reasonable should be excluded. First, although defendants suggest that the methodology is "straightforward," that explanation is nowhere to be found in the SBSA report. Rather, the entirety of the explanation as to the credit is as follows:

> With respect to the Ancillary Building, SBSA understands that a credit of $340,000 was granted to the purchasers of the structure at time of sale to remove and replace the existing single-ply roof membrane system. Based upon our calculations using current pricing, this credited cost is reasonable as the current line item pricing derived by Mr. Cooprider indicates that the replacement of the roof covering system alone on the Ancillary Building would be on the order of $365,000 (less any replacement of the rooftop appurtenances and any parapet wall copings).

Docket No. 78-1 at 115. Contrary to defendants' assertion, this opinion does not explain that the roof construction was the same, that the cost of materials for both the

Main and Moline buildings were the same, or that Xactimate was used in the same fashion for the Moline building as the Main building.  "[T]he relevant methodology by which he reached his conclusions remains undisclosed," and, as a result, it is "impossible to conclude whether this opinion is reliable."  *See Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1139 (D. Colo. 2019).

Second, assuming that defendants' explanation was found in the SBSA report, it still would not provide an adequate explanation.  As the Court already stated, how the Xactimate estimate is arrived at is not explained.  The same analysis applies to the Moline building estimate, which is also purportedly based on Xactimate.  Additionally, even if the $360,000 estimate was adequately explained, Mr. Fronapfel's opinion that the $25,000 difference is "reasonable" is completely unsupported.  Mr. Fronapfel does not explain what might have led to that difference, what ranges are acceptable in the field, and whether this difference fell into the generally accepted range.  He simply states that it is "reasonable" without more.  Under Rule 702, that is insufficient.  As a result, Mr. Fronapfel's opinion that the $340,000 cost credit was reasonable will be excluded.[3]

## IV.  CONCLUSION

Wherefore, it is

**ORDERED** that Plaintiff's Opposed Motion to Exclude or Limit Defendants'

---

[3] Plaintiff makes several other arguments pursuant to Rules 26, 37, and 703. *See* Docket No. 78 at 10-15.  However, these are alternative arguments in support of excluding the opinions already addressed.  Because the Court has excluded Mr. Fronapfel's opinions on other grounds, there is no need to address plaintiff's other arguments.

Expert Edward Fronapfel's Opinion Testimony [Docket No. 78] is **GRANTED**.

DATED March 17, 2021.

                                                 BY THE COURT:

                                                 _____
                                                 PHILIP A. BRIMMER
                                                 Chief United States District Judge