IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00346-PAB-MEH

OWNERS INSURANCE COMPANY,

    Plaintiff,

v.

11380 EAST SMITH ROAD, LLC, and
3555 MOLINE, LLC,

    Defendants.

## ORDER

This matter is before the Court on Defendants' Motion for Reconsideration of *Sua Sponte* Order Dismissing Claim for Appraisal (ECF 20) [Docket No. 141]. Plaintiff responded, Docket No. 144, and defendants replied. Docket No. 152.

**I. BACKGROUND**

This dispute involves an alleged breach of insurance contract and subsequent bad faith in resolving a claim under the policy. On May 23, 2015, plaintiff issued a building and personal property insurance policy to defendants for two buildings. *See* Docket No. 1 at 2, ¶ 3. One building was located at 11380 East Smith Road and the other at 3555 Moline Street in Aurora, Colorado. *See id.* at 1-2, ¶¶ 2–3. On June 24, 2015, a hail storm occurred at both Smith Road and Moline Street. *See id.* at 2, ¶ 5. Defendants made a claim to plaintiff for property damage from the hail storm. *Id.* Plaintiff and defendants conducted their own investigation of the property, which resulted in disputes over "the scope of the alleged damage, the scope of the associated

repairs, and the scope of coverage under the Policy." *See id.* On February 8, 2017 plaintiff filed suit. *See id.* at 1. Plaintiff seeks relief in the form of various declaratory judgments that clarify what plaintiff's responsibilities are under the policy and whether the alleged damage is covered under the policy. *See id.* at 18–23. Defendants filed an answer and counterclaim on April 3, 2017. *See* Docket No. 12. Defendants bring claims for breach of contract, unreasonable delay in violation of Colo. Rev. Stat. §§ 10-3-1115, 1116, and common law bad faith. *See id.* at 33–36. Defendants also brought a claim for an appraisal. *See id.* at 32–33.

On the issue of appraisal, the policy provides:

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of th e property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Docket No. 1-6 at 1.

On July 26, 2017, Senior District Judge Richard P. Matsch held a scheduling conference in this matter. *See* Docket No. 20. The minutes of that hearing indicate that he determined that the Court would not enforce defendants' appraisal claim. *Id.* The minutes contain no elaboration on the parties' arguments or the Court's reasoning.

*Id.* at 1. A transcript of the hearing reflects that the Court found that the appraisal provision was inapplicable because plaintiff contended that the damage was not simply the result of the June 2015 hail storm, but was instead caused by the roofs not being able to withstand the effects of the hail storm, long term wear and tear, mechanical problems, and lack of maintenance. *See* Docket No. 148 at 8:19–9:12. The Court determined that the issue, therefore, was not just the value of the loss. *Id.* at 9:13–14. Following the Court's ruling at the scheduling conference, the parties and the Court proceeded without defendants' appraisal counterclaim. *See, e.g.*, Docket No. 97 at 2 n.1 ("Defendants also brought a claim to compel appraisal, which has already been dismissed. *See* Docket No. 20."). On March 26, 2019, Judge Matsch held a pretrial conference in this matter, at which the Court reiterated its ruling that appraisal was not applicable because of coverage disputes. Docket No. 43. The case was re-assigned, initially to Senior District Judge John L. Kane on May 30, 2019, *see* Docket No. 46, and then again on October 3, 2019. *See* Docket No. 59.

On October 1, 2021, the Court held a trial preparation conference, vacated the trial due to a conflict with a criminal trial set at the same time, and permitted the parties to file certain motions. *See* Docket No. 140. Defendants now seek reconsideration of Judge Matsch's dismissal of the appraisal counterclaim. *See generally* Docket No. 141. Plaintiff opposes defendants' motion. *See generally* Docket No. 144.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858,

3

861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); see also *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). In order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1–2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *Cf. Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."). Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### III. ANALYSIS

Because the Court has jurisdiction in this matter pursuant to 28 U.S.C.

§ 1332(a), the Court applies Colorado law. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Colorado law provides that issues of an insurance policy's coverage are matters of law reserved for the court. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). Colorado law also provides that insurance policies are to be enforced as written unless the policy language is ambiguous. *See Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). This requires that policy language should be construed to reflect the intent of the parties. *Id.* "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo. App. 2010).

Defendants argue that the Tenth Circuit's recent decision in *BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169 (10th Cir. 2021), justifies reconsideration of the appraisal ruling. Docket No. 141 at 1. The facts of *BonBeck* are similar to this case and are relevant to the Court's consideration of defendants' motion.

Plaintiffs Parker, LLC and BonBeck HL, LC (collectively, "BonBeck") filed a claim with The Travelers Indemnity Company of America ("Travelers"), its insurer, for hail damage to BonBeck's property located in Parker, Colorado. *BonBeck*, 14 F.4th at 1172; *Bonbeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14-cv-02059-RM-NRN, 2020 WL 533733, at *1 (D. Colo. Feb. 3, 2020). Travelers acknowledged that the hailstorm caused some of the claimed damage, and that such damage was covered, but Travelers insisted that other damage, due to wear and tear, was not covered. *BonBeck*, 14 F.4th at 1172. BonBeck invoked the policy's appraisal provision, which is nearly identical to the appraisal provision in this case, *compare id.* at 1177 *with* Docket

5

No. 1-6 at 1, but Travelers refused to consent to appraisal unless BonBeck agreed that the appraisers would not be permitted to decide whether the property damage was in fact caused by the hailstorm. *Id.* BonBeck rejected this condition. *Id.* Travelers filed a declaratory judgment action seeking confirmation that the appraisal provision in the policy did not permit appraisers to determine causation. *Id.* The district court, applying Colorado law, rejected Travelers's argument and found that the policy's appraisal provision permitted the appraisal panel to decide causation. *Id.*; *Travelers Indem. Co. of Am. v. BonBeck Parker, LLC*, 223 F. Supp. 3d 1155, 1158 (D. Colo. 2016). The Tenth Circuit affirmed, holding that, if the Colorado Supreme Court were faced with this issue, it would recognize that the policy's appraisal provision, permitting either party to request an appraisal on the "amount of loss," "unambiguously encompasses causation disputes." *Id.* at 1173–78. The court also noted that, after appraisal, while Travelers may not revisit the appraisal's causation finding, the last sentence of the policy, which stated, like the policy in this case, "[i]f there is an appraisal, we will still retain our right to deny the claim," permitted Travelers to deny the claim for reasons other than causation. *Id.* at 1177.

Defendants argue that *BonBeck* is the conclusive resolution of a long-standing dispute between insurers and insureds regarding whether an appraisal of the "amount of loss" may include a determination of causation. Docket No. 141 at 4. Defendants also insist that plaintiff would not suffer prejudice because appraisal is a neutral process that effectively and efficiently resolves disputes on covered losses. *Id.* at 6–7. In response, plaintiff argues that *BonBeck* was not a change in controlling law, that the Court's ruling on the appraisal issue was correct, and that appraisal would be prejudicial

to plaintiff.  See Docket No. 144 at 3–8.

### A.  Whether *BonBeck* is a Change in Controlling Law

Defendants argue that *BonBeck* is a change in controlling law.  Docket No. 141 at 1.  Defendants explain that *BonBeck* decided that appraisal panels may determine causation of damages on an insured's property, an issue that neither the Colorado Supreme Court nor Tenth Circuit had addressed previously.  *Id.* at 3–5.  Defendants note, however, that other courts in this district have determined that causation may be decided as part of an appraisal and that appraisal is favored in Colorado.  *Id.* at 3–5.

Plaintiff argues that *BonBeck* does not amount to a change in controlling law because, as defendants acknowledge, every district and magistrate judge in this district have concluded that causation may be decided at appraisal.  Docket No. 144 at 3.  Moreover, plaintiff argues, *BonBeck* is not controlling on the issue of state law because, as the Tenth Circuit explained, it was only predicting how the Colorado Supreme Court would handle the issue if presented with it and, therefore, according to plaintiff, *BonBeck* does not "break new legal ground."  *Id.* at 3–4.

Plaintiff is mistaken for two reasons.  First, plaintiff's argument is that *BonBeck* is not a change in controlling law because *BonBeck* is consistent with, rather than opposed to, the consensus within the District of Colorado.  However, plaintiff is incorrect that a ruling by the Tenth Circuit affirming consensus among the district courts cannot amount to new controlling law.  This is because, before *BonBeck*, there was no *controlling* law on this issue, as no district court decision is binding on another district judge and the Colorado Supreme Court has not decided the issue.  *See Camreta v.*

7

*Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., *Moore's Fed. Prac.* § 134.02[1][d] (3d ed. 2011)). Second, plaintiff is also incorrect that the Tenth Circuit's prediction on how the Colorado Supreme Court would resolve the issue is not binding on this Court. In fact, the rule is the opposite. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Third, although it is not plaintiff's burden to show that reconsideration is unwarranted, plaintiff has identified no earlier Tenth Circuit or Colorado Supreme Court authority on this issue that could show that the law was already decided before *BonBeck*, and the Court is not aware of any such authority. Defendants are therefore correct that *BonBeck* is a change in controlling law on the issue of whether an appraisal panel may determine issues of causation.

Plaintiff's additional arguments on this issue do not change the Court's analysis. Plaintiff argues, first, that the Court already ruled on the issue at the scheduling and pretrial conferences and that defendants did not challenge the ruling at the time. Docket No. 144 at 4–5. It is understandable, however, that defendants did not seek reconsideration earlier because defendants' motion for reconsideration is based on *BonBeck*, a decision that was issued on October 1, 2021. Without *BonBeck*, defendants' argument for reconsideration presumably would have been limited to

8

reiterating its arguments at the scheduling and pretrial conferences. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) ("A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier."). Thus, defendants had no ground for reconsideration before *BonBeck*, short of manifest injustice, previously unavailable evidence, or clear error, which, given that there was no controlling law, would have been unsuccessful.

Second, plaintiff argues that this Court "recognized Judge Matsch's prior appraisal dismissal and has treated [the counterclaim as] being dismissed." Docket No. 144 at 5. Plaintiff is correct that the parties and the Court operated on the understanding that the appraisal counterclaim had been dismissed, but that does not affect the merits of defendants' motion.

Third, plaintiff argues that defendants admitted that all issues would be resolved by the Court or by the jury, presumably implying defendants admitted that the appraisal counterclaim was no longer viable because appraisal would be resolved by an appraisal panel. *Id.* Again, plaintiff is correct that the parties and the Court understood the appraisal counterclaim to have been dismissed; however, plaintiff's implication that defendants proceeding without the appraisal counterclaim meant that defendants waived any future argument to reinstate the counterclaim based on a change in controlling law is incorrect.

### B.  Whether Dismissal of the Appraisal Counterclaim was Correct

Defendants argue that, in light of *BonBeck*, the Court erred in dismissing the appraisal counterclaim because plaintiff's grounds for dismissing the counterclaim are all based on causation, which is in the purview of an appraisal panel. Docket No. 141.

9

Plaintiff disagrees and argues that "Judge Matsch correctly ruled that appraisal was not required" because "legal issues and numerous coverage issues needed (and still need) to be resolved." Docket No. 144 at 5–6. These issues, according to plaintiff, include (1) interpretation of the scope of the repairs that were required by the International Building Code ("IBC"), i.e., whether the IBC required complete replacement of the roof; (2) whether the policy's "Ordinance or Law" coverage applies; (3) whether the damage occurred before the policy period because of "the presence of moisture in the roofing system"; (4) whether defendants still have an interest in the property at 3555 Moline Street because it was sold. *Id.* at 6. Plaintiff insists that these legal issues "are not appropriate for appraisal, and instead should only be determined by the Court." *Id.*

The Court need not determine whether these are legal issues that the Court will resolve or factual determinations that an appraisal panel may determine[1] because the existence of legal issues, including coverage disputes, does not preclude appraisal. The court in *BonBeck* relied, in part, on *Auto-Owners Ins. Co. v. Summit Park Townhome Assn.*, 100 F. Supp. 3d 1099 (D. Colo. 2015), which many courts in this district have followed. *See, e.g.*, *Church Mut. Ins. Co. v. Rocky Mt. Christian Church*, 20-cv-1769-WJM-KLM, 2021 WL 1922986, at *2 (D. Colo. May 13, 2021); *Edward v. Great N. Ins. Co.*, 18-cv-1052-WJM-KLM, 2021 WL 307506, at *4 (D. Colo. Jan. 29, 2021); *Rooftop Restoration & Exteriors, Inc. v. Nautilus Ins. Co.*, 20-cv-03158-KMT,

---

[1] The Court, however, notes that plaintiff's third concern, i.e., whether the damage occurred because of pre-existing moisture in the roofing system, is a quintessential causation issue. *See, e.g.*, *BonBeck*, 14 F.4th at 1181 ("the causation question involves separating loss due to a covered event from a property's pre-existing condition" (citation omitted)).

10

2020 WL 7027439, at *1 (D. Colo. Nov. 30, 2020); *Fireman's Fund Ins. Co. v. Steele St. Ltd. II*, 17-cv-01005-PAB-SKC, 2019 WL 588190, at *3 (D. Colo. Feb. 13, 2019).

The insurer in *Summit Park* argued, as plaintiff does here, that appraisal was inappropriate because of the parties' unresolved legal issues, including whether the policy provided coverage for replacement of undamaged property "to achieve 'matching' or 'visual consistency' with damaged property that [was] replaced." 100 F. Supp. 3d at 1101. The court found that, "in determining what damage, if any, was caused by the September 2013 storm, the appraisers will not be making, and will not preclude the Court from making, coverage determinations." *Id.* at 1103. The court also explained that the parties may still dispute coverage issues after the appraisal process has been completed because "legal determinations, including regarding coverage, are clearly outside the scope of the appraisal process." *Id.* at 1104.

*Summit Park* is instructive because it shows that the parties may proceed to appraisal on the "amount of loss," *see* Docket No. 1-6 at 1, which includes determining causation, *see BonBeck*, 14 F.4th at 1173–78, despite additional legal issues and coverage determinations that the Court may have to address after appraisal. The Court therefore finds that the issues that plaintiff identifies, including the scope of the IBC and the policy's Ordinance or Law provision, as well as whether defendants still have an interest in 3555 Moline Street, are not impediments to an appraisal, which will "only yield factual determinations related to the amount of loss associated with a given event – in this case, hail damage." *See Church Mut. Ins. Co.*, 2021 WL 1922986, at *2. Moreover, the Court notes that, after the appraisal, plaintiff "can deny the claim for a host of other reasons having nothing to do with the cause of the damage," *see*

11

*BonBeck*, 14 F.3d at 1180, because the appraisal provision provides, "[i]f there is any appraisal, we [plaintiff] will still retain our right to deny the claim." Docket No. 1-6 at 1. The Court therefore finds reconsideration of the order dismissing the appraisal counterclaim is appropriate in light of *BonBeck*.

### C.  Whether Plaintiff Would Suffer Prejudice

Plaintiff argues that it would suffer prejudice if the Court grants defendants' motion. Docket No. 144 at 7–8. Plaintiff's argument is partly that defendants' motion comes more than four years after the Court's ruling on the appraisal counterclaim. *Id.* at 7. The Court finds this argument unpersuasive. First, defendants' motion is based on a change in controlling law and could not have been filed before *BonBeck*, or another Tenth Circuit or Colorado Supreme Court case, was decided. Second, defendants did not delay filing their motion. They filed it within seven days of the Tenth Circuit's opinion in *BonBeck*. Third, although the Court previously denied plaintiff's motion for leave to file a motion for summary judgment and defendants' motion for leave to designate a new expert, *see* Docket No. 122 at 2–7, the Court permitted the parties to raise certain issues again because the trial was continued. *See* Docket No. 140. It would not be appropriate for the Court to permit plaintiff to seek leave to file a new summary judgment motion, but deny defendants an opportunity to raise the appraisal issue.[2]

The Court also notes the strong public policy considerations that favor appraisal

---

[2] Defendants argue that plaintiff cannot claim prejudice because plaintiff "incorrectly forced" the litigation by not agreeing to appraisal. Docket No. 141 at 8. Because the Court finds appraisal appropriate, the Court declines to address this issue.

and finds that these considerations outweigh any potential prejudice to plaintiff. *See, e.g.*, *Summit Park*, 100 F. Supp. 3d at 1103 (noting that an appraisal is a kind of arbitration and that Colorado has a strong public policy in favor of arbitration).

### D. Whether a Stay is Appropriate

Defendants argue that the Court should stay proceedings pending appraisal. Docket No. 141 at 8–9. A court may enter a stay of proceedings incidental to its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *see also Fireman's Fund*, 2019 WL 588190, at *4; *Garcia v. State Farm Mut. Fire and Cas. Co.*, 20-cv-02480-PAB-MEH, 2021 WL 4439792, at *6 (D. Colo. Sept. 27, 2021). Courts in this district consider the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Springmeadows*, 2014 WL 7005106, at *1 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-KLM, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

Defendants argue it is most efficient to wait until the appraisal process is complete before proceeding with other matters, including plaintiff's claim for declaratory relief, because some of these outstanding issues relate to causation and the amount of

13

loss, which will be decided in the appraisal. Docket No. 141 at 9. Plaintiff disagrees. Plaintiff argues that the parties were diligently preparing for trial before the trial date was vacated and stress that this case has been litigated for over four years, that plaintiff has an interest in proceeding expeditiously, and that witnesses' recollections are beginning to erode as more time passes. Docket No. 144 at 8–9.

Although the Court is sensitive to the age of this case and plaintiff's interest in proceeding expeditiously, the Court agrees with defendants that it is most efficient for the parties and the Court to wait until the appraisal process is complete. The appraisal process will resolve key factual issues that are in dispute, particularly in regard to causation and amount of loss. Resolution of these issues will bear on other matters, such as the appropriateness of additional expert testimony, and will clarify the issues that will remain for the Court after appraisal, including plaintiff's coverage disputes. The Court also finds that appraisal could result in significant cost savings for the parties. The Court therefore finds that the first three factors weigh in favor of staying this action pending appraisal. The Court gives little weight to the fourth and fifth factors, as the Court is not aware of any significant interests of non-parties or the public that a stay would impact, either positively or negatively. Therefore, the Court concludes that a stay is appropriate.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Reconsideration of *Sua Sponte* Order Dismissing Claim for Appraisal (ECF 20) [Docket No. 141] is **GRANTED**. It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 41.2, this case is administratively closed. Either party may move to reopen the case for good cause. Completion of the appraisal process will constitute good cause. It is further

**ORDERED** that, within 30 days after completion of the appraisal process, the parties shall file a joint status report with the Court, advising the Court whether the case should be reopened for good cause. It is further

**ORDERED** that Defendants' Combined Motions in Limine [Docket No. 125] is **DENIED without prejudice**. It is further

**ORDERED** that Defendants' Renewed Motion to Amend Pretrial Order (Doc. 72) to Grant Leave for Defendants to Designate Witness Pursuant to Fed.R.Civ.P. 26(a)(2)(C) [Docket No. 142] is **DENIED without prejudice**. It is further

**ORDERED** that Plaintiff's Renewed Motion for Leave to File Dispositive Motion after the Scheduling Deadline [Docket No. 146] is **DENIED without prejudice**. It is further

**ORDERED** that Plaintiff's Motion to Amend Pretrial Order (Doc. 72) for Leave to Designate Insurance Industry Standards Expert [Docket No. 147] is **DENIED without prejudice**.

DATED November 30, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge